WALTER M. ELSWICK, Judge.
The petitioner, Consolidation Coal Company, a Delaware corporation, and the successor to the Consolidation Coal Company, a Maryland corporation, which latter corporation was authorized to do business in the state of West Virginia from the year 1909 to the year 1935, inclusive, presented its petition for a refund of $3844.64, representing a claim for overpaid corporation license taxes by the said Maryland corporation, and which petitioner alleges were overpaid by reason of the fact that the state auditors of the state of West Virginia during the period in question, namely, for the years 1917 to 1929, inclusive, required payment of corporation license taxes on *11 the basis of the authorized capital stock of the said Maryland corporation, when in fact the said corporation should have paid a license tax only on its issued and outstanding capital stock, represented by its property owned and used in the state of West Virginia.
From the record it appears that by section 130 of chapter 3 of the acts of the Legislature of West Virginia, second extraordinary session, 1915, and the reenactment thereof by section 130 of chapter 102 of the acts of the Legislature of West Virginia, regular and extraordinary sessions, 1919, the said Consolidation Coal Company, a Maryland corporation, was required by the state auditors for the years 1917 to 1929, both inclusive, to pay its capital stock license tax on the basis of its authorized capital stock rather than on the basis of its issued and outstanding capital stock.
The state contends, among other grounds of defense assigned, that the petitioner is barred by laches and the statute of limitations, from recovering the aforesaid amount of overpaid taxes, and it is therefore encumbent upon us to determine this question. If its claim is barred by the statute of limitations then the court of claims would be without authority to recommend an award.
On November 5, 1929, the Supreme Court of Appeals of West Virginia, in the case of State v. Azel Meadows Realty Company, 108 W. Va. 118, 150 S. E. 378, declared said section 130 of chapter 3 of the said acts of 1915, and said section 130 of chapter 102 of the said acts of 1919 (sections 126 and 130 of chapter 32 of the code of 1923) in violation of the fourteenth amendment to the Federal Constitution as between foreign corporations. The gist of the decision insofar as it pertains to petitioner’s claim wais stated in syllabus 2 thereof as follows:
“Sections 126 and 130, chapter 32, code, imposing upon a foreign corporation a yearly license tax for the privilege of doing business and holding property in the state is in violation of the 14th amendment of the Federal Constitution as between foreign corpora *12 tions, if and when said license tax is computed according to the proportion of authorized capital stock which is represented by its property owned and used in this state.”
This decision, in declaring sections 126 and 130 of chapter 32 of the 1923 code unconstitutional and illegal between foreign corporations, in effect declared the same provisions illegal and unconstitutional under section 130 of chapter 3 of the said acts of 1915. The first case involving the question of the unconstitutionality of acts of like kind was decided by the Supreme Court of the United States in the case of Air-Way Electric Appliance Corporation v. Day, Treasurer of the State of Ohio, 266 U. S. 71, wherein the court held:
“The Ohio act, having no tendency to produce equality, and being of such character that there is no reasonable presumption that substantial equality will result from its operation, violates the equal protection clause of the Fourteenth Amendment.”
This case was decided on October 20, 1924, and on January 19, 1925, the general attorney for the Consolidation Coal Company, addressed a letter to the then state auditor calling his attention to this court decision.
Section 21, article 2, chapter 14 of the present code, Michie’s code section 1147 (16), chapter 20, section 21 acts of 1941, provides:
“The court shall not take jurisdiction over a claim unless the claim is filed within five years after the claim might have been presented to such court. If, however, the claimant was for any reason disabled from maintaining the claim, the jurisdiction of the court shall continue for two years after the removal of the disabilitsn With respect to a claim arising prior to the adoption of this article, the limitaton of this section shall run from the effective date of this article: Provided, however That no such claim as shall have arisen prior to the effective date of this article shall he barred by any limitation of time imposed by any other statutory provisions if the claimant shall prove *13 to the satisfaction of the court that he has been prevented or restricted from presenting or prosecuting such claim for good cause, or by any other statutory restriction or limitation.” (Italics supplied.)
By chapter 12, article 3, section 3, of the code of 1931; Michie’s code, section 1021, which was section 9, chapter 17 of the code of 1923, it was provided:
“No claim shall be allowed by the auditor after five years from the time when it might by law have been presented for payment. No petition shall be received in either branch of the Legislature claiming a sum of money, or praying the settlement of unliquidated accounts, unless it be accompanied with a certificate of disallowance by the auditor, or by the officer, board, or person whose order or requisition was necessary to authorize payment thereof, stating the reason why it was rejected. Nor shall a petition be presented to the Legislature for the payment of any claim against the state which might have been asserted under the provisions of article two, chapter fourteen of this Code, unless it be accompanied by a copy of the record of the proceedings of the proper court upon such claim.” (Italics supplied.)
By chapter 14, article 2, sections 1 and 5 of the code, prior to the amendment of 1941, it was provided:
SECTION 1. “Any person having a pecuniary claim against the State, which the auditor has disallowed in whole or in part, may apply by petition to the circuit court of the county in which the seat of government is, to have such claim audited and adjusted.”
SEC. 5. “No such petition as is mentioned in section one of this article shall be presented or filed, and no such suit as is mentioned in the next preceding section shall be brought after five years from the time the claim of the petitioner or plaintiff might have been presented or asserted. . . .”
Neither the petitioner nor its predecessor applied by petition to the circuit court of Kanawha county to have its claim *14 audited and adjusted before or after the decision in the case of State v. Azel Meadows Realty Company, supra.
Chapter 14, article 2, section 3, of the code of West Virginia of 1931, provided for the following procedure when such petition was filed:
“The court shall ascertain and enter of record what sum, if any, is due to the petitioner upon the claim mentioned in the petition and shall certify its decision to the auditor whether the claim, or any part thereof, be allowed or not; and, if such claim or any part of it be allowed, the auditor shall report the same to the legislature at its next session. But no such claim shall be paid until an appropriation shall be made therefor by the legislature.” (Italics supplied.)
There is not any attempt on the part of the petitioner to show that it was prevented or restricted from filing its petition in the circuit court and having its claim presented by the auditor to the Legislature as said section 3 of article 2, chapter 14 of the 1931 code required. This section made it the duty of the auditor to so present the claim if such action had been taken. The auditor had refused to pay the claim and a remedy was afforded the petitioner by the procedure then provided for presenting the claim to the Legislature. The petitioner was advised by the auditor that legislative action was necessary before he could make refund (record pp. 21 and 40.) Therefore, petitioner was not misled or prevented from taking the required procedure for submitting the claim within the prescribed period of five years to the circuit court to be then reported by the auditor to the Legislature.
The petitioner contends that it was without legal authority to compel the state auditor to certify its claim to the board of public works and that it was at the mercy of the state auditor, and that even if the state auditor and the board of public works had honored the refund, the Legislature might have turned it down and refused an appropriation therefor; that the remedy provided for under section 9 of chapter 17, *15 of the code of 1923 was incomplete and inadequate, but we are of the opinion that the remedy provided under said section 9 of chapter 17 was not exclusive, but that the claim could have been presented under chapter 37 of Barnes code of 1923, chapter 14, article 2 of the code of 1931, which provided that the auditor “shall report” such action by the circuit court to the Legislature.
The petitioner also contends that the circuit court was not such a tribunal that could pass upon the constitutionality or the unconstitutionality of this tax law, under sections 1 and 5 of chapter 37 of the code of 1923, chapter 14, article 2 of the code of 1931; that the terms of these sections of the statute did not confer jurisdiction on the circuit court to determine the constitutionality of the law in respect to the taxes being audited by that court. We are of the opinion that while it may be true that the circuit court did not have jurisdiction to pass upon the constitutionality of the assessment, neither would the court of claims have this right, but the only opportunity which our Supreme Court had to pass upon its constitutionality of the statute was at the time it rendered the decision in the case of State v. Azel Meadows Reality Company, supra. This was November 5, 1929. The decision in this case would be the only authority which the court of claims has for the unconstitutionality of the law. The court of claims is a special instrumentality of the Legislature and the Legislature does not declare its own acts unconstitutional. The circuit court of Kanawha county would have had the same decision before it from November 5, 1929, which the court of claims now has. The basis on which petitioner now files its claim is that the statute was declared unconstitutional by our Supreme Court on November 5, 1929 in the Azel Meadows Realty Company case. The taxes had been paid before this decision was rendered which the Kanawha circuit court would have had as authority for its action.
^Section 21, article 2, chapter 14 of the present code, Michie’s code 1147 (16) does not state that the petitioner must have had an adequate remedy in law or equity prior to the creation *16 of the court of claims which statute creating same repealed the former provisions of article 2 of chapter 14. It is true that in the case of Standard Oil Company of New Jersey v. Fox, 6 F. Supp. 494, the court had to deal with the question of whether or not the plaintiff had an adequate remedy at law, which, if existing would have denied the plaintiff in that case relief by injunction. In our opinion, the court would necessarily have to hold the same today as it held in that case, and grant injunctive relief against an unconstitutional statute in view of the provisions of section 4, article 2, chapter 14 of the present statute, referring to the court of claims, Michie’s code cum. supp. which provides that:
“ . . . The court shall not be invested with or exercise the judicial power of the state in the sense of article eight of the constitution of the state. A determination made by the court shall not be subjected to appeal to or review by a court of law or equity created by or pursuant to article eight of the constitution. . . .”
Section 12, article 2 of chapter 14, Michie’s code cum. supp. 1147(7) provides:
“ . . . But no liability shall be imposed upon the state or any of its agencies by a determination of the court of claims approving a claim and recommending an award, unless the legislature has previously made an appropriation for the payment of a claim subject only to the determination of the court. . . .”
The court in the case of Standard Oil Company of New Jersey v. Fox, supra, in dealing with the subject of whether or not the plaintiff had a sufficient remedy at law to deprive it of relief by injunction states that the former statute (chapter 14, article 2) was doubtful and ambiguous and made the remedy at law in question debatable and uncertain for the reason that the claim could not be paid until an appropriation was made therefor by the Legislature. The statute prior to the act of 1941 did not specify that a determination made by the circuit court should not be subjected to appeal or to review and did not expressly state that no liability shall be imposed *17 upon the state or any of its agencies by a determination of the circuit court approving and auditing a claim, but which was so held by the court in its reasoning as a grounds for injunctive relief. Such limitations are expressly set forth in the 1941 act which leaves to the courts of the state a right to enjoin the enforcement of an unconstitutional statute by injunction due to the lack of an adequate remedy provided for in a court of law.
The right of petitioner to file its petition with the circuit court of Kanawha county certainly vested as to all of its claim on November 5, 1929 with the decision of the court in the case of State v. Azel Meadows Realty Company. If its petition had been filed with the circuit court promptly the state auditor would have been required under the statute to report the court’s action to the Legislature at its next session which was in 1931. It would appear that by following the five year limitation of the statute that the claim in its entirety was barred for presentation to the Legislature by the statute of limitations in 1936. It being a pecuniary claim, that is to say, one relating or pertaining to money, a proceeding was then provided for having it presented to the Legislature. In view of the record of the case and the statute, a majority of the court are of the opinion that petitioner’s claim could have been presented to the Legislature upon the finding of the circuit court of Kanawha county at any time from November 5, 1929 through 1934-1936. This was not done. The statute of limitations certainly had run on the claim by the year 1936.
It does not appear from the record that any facts were presented to the court of claims which could not have been presented to the circuit court of Kanawha county. When we consider the object and purpose of the statute which repealed the former five sections of article 2, chapter 14, and enacted in their place the present twenty-six sections we cannot conceive that the Legislature intended to revive claims which had already been barred by a statute of limitations which were Llaims of such nature that the Legislature had provided a procedure for having them presented to it for an appropriation. *18 The purpose of the present law as set forth in section 1 of the statute is to provide a method for the consideration of claims which cannot be determined in a court of law or equity. A method had existed for the hearing and presentation of the claim in question before the circuit court of Kanawha county. The claim had been barred from consideration by the Legislature by a general statute at least 5 years prior to the passage of the 1941 statute. For the reasons herein stated a majority of the court are of the opinion that an award should be denied and an order will be entered accordingly.
Judge Schuck dissents and will file a dissenting opinion setting forth his views.